NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 04-23121 |
| John F. Grillo and Marie T. Grillo | : | |
| Debtors | : | |
| John F. Grillo and Marie T. Grillo | : | Adversary No. 04-2640 |
| Plaintiffs | : | |
| v. | | |
| | : | |
| Duilio Corigliano, United States of America (Internal Revenue Service), and Isabel C. Balboa, Standing Chapter 13 Trustee | : | **OPINION ON APPLICATION OF 26 U.S.C. § 6672** |
| | : | |
| Defendants | : | |

APPEARANCES:   David A. Kasen, Esquire
Kasen, Kasen & Braverman
1874 East Route 70, Suite 3
P.O. Box 4130
Cherry Hill, New Jersey  08034
Counsel for Debtors

Pat S. Genis, Esquire
Trial Attorney, Tax Division
U.S. Department of Justice, P.O. Box 227
Ben Franklin Station
Washington, D.C.  20044
Counsel for Internal Revenue Service

In this adversary proceeding, in Count Two of the complaint, the debtor,

John F. Grillo, challenges the validity of civil penalties assessed against him by

the Internal Revenue Service ("IRS").[1]  The assessment is based upon the IRS's

contention that the debtor is a "responsible person", for purposes of 26 U.S.C.

§ 6672, who willfully failed to pay over federal employment taxes owed by two

corporations, the Grillo Electric Company and the G.E.C. Lighting Supply

Corporation.  For the reasons expressed below, the debtor's request for an

order expunging the civil penalty claims asserted by the IRS is denied.

## FACTS AND PROCEDURAL HISTORY

The debtor, John F. Grillo, is a licensed electrical contractor.  In 1970, he

started an electrical contracting company called the Grillo Electric Company

("Grillo Electric").  The company was engaged in commercial and residential

electrical contracting, including new construction and renovation work.  His

two sons, John A. Grillo and Kelly Grillo, joined the business sometime during

the 1970s and 1980s, respectively, directly from high school and college.

The debtor and his two sons testified at trial that after 1988, the debtor

gradually ceased his management role and became more of an advisor to his

sons, who actively took over the businesses.  He came in regularly and had his

---

[1]      Count One of the debtors' complaint sought to invalidate the 1991
and 1995 mortgages on their personal residence and is the subject of a
separate opinion.

assigned desk, but spent most of his time in the field checking ongoing jobs.

His two sons consulted him on various projects, but did not directly discuss

the company's financial concerns with him.  Both sons testified that it was

their responsibility to handle the finances, and that it was not their father's

responsibility.  In 1994, the debtor, his wife and their two sons formed a

second company, G.E.C. Lighting Supply Company ("G.E.C.").  The new

company sold lighting fixtures and electrical supplies directly to other

contractors and to retail customers.

The debtor and his wife owned 98% of the shares of both Grillo Electric

and G.E.C.[2]  During the period in question, Marie Grillo was not involved in the

business.  The debtor was president of Grillo Electric, and vice president of

G.E.C.  He had full check-signing authority, access to the records of both

companies, and spent most of his time in the field on specific jobs.  Until 1989,

the debtor managed Grillo Electric and was responsible for the hiring, firing

and managing of employees, directing the payment of bills, negotiating large

purchases, managing corporate bank accounts, authorizing payroll checks,

---

[2]       Although there was some variation in the testimony and
documents offered on the issue of the extent to which the debtor owned shares
in the two corporations, the debtor confirmed in his testimony that he and his
wife together owned 98% of the shares of each company while each of their
sons owned a 1% share.  The 1995 K-1 portion of the debtor's tax return
reflects that his wife Marie owned 51% of the shares of G.E.C., while he owned
47% of the shares.

and determining the company's financial policy.  From 1989 until May 1998,

when both companies filed bankruptcy petitions, the debtor's two sons took

over the financial management of the company and made all of the financial

decisions.[3]  The debtor acknowledged that while he was still technically

authorized to conduct the business of the two companies, he chose not to do so

after his sons took over the day to day responsibilities to manage the

businesses.


Sometime during the early 1990's, the two companies experienced a

downturn in business, including the loss of several potentially high paying

jobs.  During the fall of 1996, the debtor became aware that both companies

had failed to make substantial payments to the IRS on account of taxes

withheld from employees.[4]  Section 941 taxes were due and unpaid for the

following periods:

> Grillo Electric Company:      1991 - 4th quarter
> 1992 - 2nd and 4th quarter

---

[3]      John A. Grillo became the vice president of Grillo Electric and the president of G.E.C.

[4]      John A. Grillo testified that they started "towards '96 or so" to discuss the nonpayment of taxes, but admitted that he would "only be guessing" as to the actual first time they discussed taxes.  T17-17 through 24 (7/6/05).  Kelly testified that his father was not aware of the tax problem prior to the end of 1996, Id. at T45-7 through 9, but they did discuss it sometime before the IRS interview in December 1996.  Id. at T52-20 through 25.

-4-

                                    1994 - 2nd quarter
                                    1995 - 2nd, 3rd and 4th quarter

G.E.C. Lighting Supply          1995 - 3rd and 4th quarter
Company:                        1996 - 1st, 2nd and 3rd quarter

Until the fall of 1996, the debtor was occasionally made aware of the

companies' financial difficulties, but he claims that he did not know about the

growing tax delinquency.  During this same time period, the debtor maintains

that he did not exercise any financial control over either company.  In

December 1996, the debtor and his sons met with the IRS and completed

interviews regarding the trust fund recovery penalty or personal liability for

excise tax.


     On May 15, 1998 and on February 15, 1999, the debtor, John F. Grillo,

and his two sons were each assessed for the unpaid trust fund taxes in the

amount of $84,496.23 for Grillo Electric and $127,603.36 for G.E.C.  A notice

of federal tax lien was filed on March 13, 2000.  Each of the debtor's sons

entered into separate settlements with the IRS on their respective personal

liability for the 941 taxes.[5]


     John F. Grillo and Marie Grillo filed a joint Chapter 13 case on April 16,

_____

   [5]      John A. Grillo settled for $42,232.00 and Kelly Grillo for
$12,000.00.

2004.  The IRS filed a proof of claim on June 28, 2004, as amended on July 1,

2004, asserting that the debtors were liable for unpaid federal income taxes,

and as is relevant here, that John F. Grillo was liable for the trust fund taxes.

The debtors' case was later converted to Chapter 11.  On September 20, 2004,

the debtors filed this adversary complaint seeking in Count Two an order

expunging the civil penalty claims asserted by the IRS.  The debtor, John F.

Grillo, contends that he is not a "responsible party" for purposes of section

6672.  He insists that once his sons came into the business, he turned over the

financial control of the two companies to them.  His two sons were given full

authority to make all financial decisions for the companies, and he was not

involved in any way in making those decisions.


On January 24, 2005, the debtors filed a motion for summary judgment.

The motion was withdrawn on May 9, 2005, and this matter was tried in court

on July 6, 2005.


**DISCUSSION**


Pursuant to the Internal Revenue Code, employers are required to

withhold from the wages of their employees income and social security taxes,

and to hold such taxes in trust for the United States pursuant to 26 U.S.C.

§§ 3102, 3402, and 7501.  Section 6672 provides in part:

> Any person required to collect, truthfully account for, and pay over
> any tax imposed by this title who willfully fails to collect such tax,
> or truthfully account for and pay over such tax, or willfully
> attempts in any manner to evade or defeat any such tax or the
> payment thereof, shall, in addition to other penalties provided by
> law, be liable to a penalty equal to the total amount of the tax
> evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672.  For purposes of section 6672, a "person" is defined as "an

officer or employee of a corporation . . . under a duty to perform the act in

respect to which the violation occurs."  26 U.S.C. § 6671(b).  This definition has

been broadly interpreted to encompass anyone who is "'required to collect,

truthfully account for or pay over any tax due to the United States.'"

Greenberg v. United States, 46 F.3d 239, 243 (3d Cir. 1994) (quoting United

States v. Carrigan, 31 F.3d 130, 133 (3d Cir. 1994)).  Once the IRS makes an

assessment against a party pursuant to 26 U.S.C. § 6672, the burden of going

forward to show that the assessment was incorrect and that the debtor was not

a "responsible person" or that he did not willfully fail to pay the outstanding

taxes shifts to the debtor.  Brounstein v. United States, 979 F.2d 952, 954 (3d

Cir. 1992); United States v. Vespe, 868 F.2d 1328, 1331 (3d Cir. 1989).

The test to establish liability under section 6672 can be reduced to two

elements:  "(1) the individual must be a 'responsible person,' and (2) his or her

failure to pay the tax must be 'willful.'"  United States v. Mitchell, 82 Fed.Appx.

781, 785 (3d Cir. 2003).  See also Greenberg v. United States, 46 F.3d 239, 242

(3d Cir. 1994).  For assessment purposes, there can be more than one

"responsible person" in a company.  Quattrone Accountants, Inc. v. IRS, 895

F.2d 921, 926 (3d Cir. 1990).  See also United States v. Vespe, 868 F.2d 1328,

1332 (3d Cir. 1989).


     Whether someone qualifies as a responsible person "is a matter of status,

duty or authority, not knowledge." Id. at 927.  See also United States v.

Carrigan, 31 F.3d 130, 133 (3d Cir. 1994).  To qualify as a "responsible

person", the person must "have significant control over the corporation's

finances," although "exclusive control is not necessary." Brounstein, 979 F.2d

at 954.  The test does not require that the "individual have the final word on

which creditors should be paid in order to be subject to liability under section

6672," but instead looks to whether the person "has significant control over the

disbursement of corporate funds." Greenberg v. United States, 46 F.3d 239,

243 (3d Cir. 1994).


     Courts addressing the question of "responsibility" often focus on a seven

factor test that considers:

     (1) the contents of the corporate bylaws;

     (2) the ability to sign checks on the company's bank account;

(3) the signature on the corporation's tax returns;

(4) the payment of other creditors;

(5) the identity of officers, directors and principal stockholders in the corporation;

(6) the identity of individuals in charge of hiring and discharging employees; and

(7) the identity of individuals in charge of the firm's financial affairs.

Mitchell, 82 Fed.Appx. at 785 (citing to Brounstein v. United States, 979 F.2d 952, 954-55 (3d Cir. 1992)).  See also Greenberg v. United States, 46 F.3d 239, 243 (3d Cir. 1994); Carrigan, 31 F.3d at 133.


Here, we do not have a copy of the corporate bylaws, but the record is clear that while the debtor had the authority to act in all matters involving the company, the responsibility to conduct the company's business, including its financial matters, rested with the debtor's two sons.  The debtor was a signatory on both companies' bank accounts, and he signed checks on occasion.  The debtor did not sign the company tax returns, but he did have the authority to do so.  The debtor was a significant owner of both companies, holding 98% of the stock in each company along with his wife, who played a silent role.  He was the president of Grillo Electric and the vice president of G.E.C.  He had full access to all of the records, but did not generally review

those records.  After his sons took over the operations of the company around

1988 or 1989, he came to the office regularly, but did not have any office

duties.  He worked primarily in the field on specific projects, reviewing the

electrical work and meeting with inspectors.  Until the fall of 1996, when the

debtor became aware of the outstanding employee withholding tax liabilities

due to the IRS, the debtor had no responsibility to pay bills or to decide which

creditors should be paid.  He did not negotiate contracts, and had no contact

with creditors.  Generally, as president of Grillo Electric and vice-president of

GEC, as the founder of the companies and substantial shareholder, and as the

father of the day-to-day managers, the debtor had full authority to act in all

phases of company operations, but limited his actions to field work after 1989.


      The issue is whether status and authority, without actual responsibility,

are sufficient to impose responsible person status on the debtor, particularly

where the authority is available, but not routinely exercised.  The quotation

most often relied upon by the Third Circuit Court of Appeals to describe

responsibility in the context of section 6672, as noted above, is stated in the

disjunctive, that "responsibility is a matter of status, duty or authority, not

knowledge." Greenberg, 46 F.3d at 244, Brounstein, 979 F.2d at 954 (citation

omitted), Quattrone Accountants, 895 F.2d at 927.  Here, the debtor qualifies

as a "person" under section 6671(b) because he was an officer and an employee

of the two corporations which owed withholding taxes, and was under a duty

thereby to insure that the taxes were paid, even if he chose not to fulfill that

duty, or to delegate that duty to his sons.  He is a responsible person under

section 6672 because as president and majority shareholder,[6] with full check

writing opportunity and full access to the books and records of the company,

he was required "to collect, truthfully account for and pay over" withholding

taxes.  Although he chose not to exercise control, he had the opportunity to

exercise substantial control over the company's financial affairs.


To be distinguished here is the Carrigan case, where the Court of

Appeals reversed and remanded the grant of summary judgment by the trial

court because a genuine issue of material fact existed concerning whether the

corporate officer had "significant control" over the corporation's financial

affairs.  In Carrigan, the president of the company had signature authority to

sign corporate checks, which he exercised on one occasion, and was

responsible to raise capital for the company.  He was not a shareholder, had no

independent authority, and had no access to the records and checkbooks of

---

[6]      Although the debtor and his wife together owned 98% of the shares
of each company, she was not involved in the business of either company
during the time frame in question in any way.

the company.

In contrast here, the debtor founded the company, and allowed his sons

to assume positions of authority in the company.  Both sons readily

acknowledged that although they took responsibility for managing the affairs of

the two companies, their father never lost the authority to act in any capacity

pertaining to the companies.  The debtor is a responsible person not only

because of his status as president, but because he always retained the

authority to control the company, even if he did not exercise that authority.

In light of these circumstances, I conclude that the debtor must be

designated as a "responsible person" for purposes of section 6672.

The second part of the test under section 6672 requires that the

responsible party's failure to pay must have been "willful."  In the context of

section 6672(a), "willfulness is 'a voluntary, conscious and intentional decision

to prefer other creditors over the Government.'"  Brounstein, 979 F.2d at 955-

56 (quoting Quattrone, 895 F.2d at 928).  See also Greenberg, 46 F.3d at 244

("Any payment to other creditors, including the payment of net wages to the

corporation's employees, with knowledge that the employment taxes are due

-12-

and owing to the government, constitutes a willful failure to pay taxes."). "A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." Brounstein, 979 F.2d at 956. See also Greenberg, 46 F.3d at 244 ("In order for the failure to turn over withholding taxes to be willful, a responsible person need only know that the taxes are due or act in reckless disregard of this fact when he fails to remit to IRS."); Carrigan, 31 F.3d at 134. In addition, courts have found that reckless disregard includes the "'failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid.'" Greenberg, 46 F.3d at 244 (quoting Morgan v. United States, 937 F.2d 281, 286 (5th Cir. 1991)). Simply put, the reckless disregard standard is satisfied where the party "'(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.'" Carrigan, 31 F.3d at 134 (quoting Vespe, 868 F.2d at 1335)). There is no requirement that the party have acted with an evil motive or bad purpose. Greenberg, 46 F.3d at 244.

The debtor and his two sons had actual knowledge in the fall of 1996 that trust fund taxes for various quarters from 1991 to 1996 had not been paid

by the two companies.  The debtor did not learn of the debt until after the

payments were missed.  Nonetheless, after he was so informed, he continued to

work, he continued to receive his own paycheck, and he acknowledged that

other employees continued to be paid their salaries.[7]  The companies filed

Chapter 11 cases in 1998, and continued to operate for a period of time after

the filing, paying various operational expenses in the normal course of

business.  The payment of other creditors, including the payment of net wages

to the corporation's employees, by the debtor and his sons after all three were

aware of the delinquencies to the government constituted a willful failure to

pay taxes under section 672.  Greenberg, 46 F.3d at 244.  "It is no defense that

the corporation was in financial distress and that the funds were spent to keep

the corporation in business with an expectation that sufficient revenue would

later become available to pay the United States."  Id.  The record supports the

fact that after the debtor became aware of the trust fund tax delinquencies of

the two corporations, the companies, which he had the authority to control,

"preferred subsequent creditors over the United States".  Tiffany v. United

States, 228 F. Supp. 700, 702 (D.N.J. 1963).  "[K]nowing at all times [after

December 1996] the obligation to pay such taxes, [the debtor's] failure to pay

---

[7]      T86-3 through 10 (7/6/05).

was a voluntary, conscious and intentional act and therefore 'willful' within the meaning of 26 U.S.C. § 6672." Id. See also United States v. Vespe, 868 F.2d 1328, 1335 (3d Cir. 1989) ("One who was a responsible person when taxes were incurred, and who only later becomes aware that they were not paid, acts willfully by then paying other creditors in preference to the United States, even if the money specifically withheld has been dissipated."); Davis v. United States, 961 F.2d 867, 876-77 (9th Cir. 1992), cert. denied, 506 U.S. 1050, 113 S. Ct. 969, 122 L.Ed.2d 124 (1993).

On this record, I conclude that the debtor was a "responsible person" who willfully failed to pay over trust fund taxes due. Debtor's request for an order expunging the civil penalty claims asserted by the IRS is therefore denied.

Counsel for the IRS shall submit an order in conformance with this opinion.

Dated: October 7, 2005        _____

JUDITH H. WIZMUR
CHIEF U.S. BANKRUPTCY JUDGE

-15-