NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the matter of | : | Case No. 04-23121/JHW |
| John F. Grillo and Marie T. Grillo | : | |
| Debtors | : | |
| John F. Grillo and Marie T. Grillo | : | Adversary No. 04-2640 |
| Plaintiffs | : | |
| v. | | : |
| Duilio Corigliano, United States of America (Internal Revenue Service), and Isabel C. Balboa, Standing Chapter 13 Trustee | : | **OPINION ON SUMMARY JUDGMENT MOTION TO AVOID NOVEMBER 1, 1995 MORTGAGE** |
| Defendants | : | |

APPEARANCES:   David A. Kasen, Esquire
Kasen, Kasen & Braverman
1874 East Route 70, Suite 3
P.O. Box 4130
Cherry Hill, NJ  08034
Counsel for Debtors

Matthew A. Hamermesh, Esq.
Hangley, Aronchick, Segal & Pudlin
20 Brace Road, Suite 201
Cherry Hill, New Jersey  08034
Counsel for Mr. Corigliano

The Chapter 11 debtors seek here on their motion for summary judgment to void, pursuant to 11 U.S.C. § 544, an unrecorded mortgage dated November 1, 1995 held by the defendant Duilio Corigliano. The defendant acknowledges

that the mortgage was unrecorded but contends that a prospective purchaser would nonetheless have been placed on "inquiry notice" because the defendant also holds an earlier recorded mortgage. He believes that a purchaser who would have conducted a due diligence inquiry would have discovered the existence of the unrecorded mortgage. The defendant also maintains that equity would demand that the 1995 mortgage be enforceable against subsequent parties because the lack of recording was due solely to the debtors' failure to record it. A third basis for the defendant's opposition to the motion is that the debtors are barred from challenging the validity of the 1995 mortgage under principles of judicial estoppel.

For the reasons expressed below, debtors' motion for summary judgment is granted.

**FACTS AND PROCEDURAL HISTORY**

John F. Grillo and Marie T. Grillo borrowed $215,000.00 from the defendant Duilio Corigliano on August 30, 1991, as memorialized in a mortgage and note of the same date (hereinafter the "1991 mortgage"). The mortgage listed property located at Block 13, Lots 93 and 94, identified as 228 Betsy Scull Road, Egg Harbor Township, as collateral for the loan. The Note

required interest payments to be made, and was to be repaid in full upon the sale of the Grillos' residence at 1300 Atlantic Avenue, Longport, New Jersey or by no later than August 30, 1996. The mortgage was recorded on September 20, 1991.

In 1995, the Grillos sought an additional loan to fund the completion of an addition to the mortgaged property. On November 1, 1995, debtors borrowed an additional $53,000 from the defendant, and executed a new mortgage and note in the amount of $300,000 (the "1995 mortgage"). The $300,000 was comprised of the $215,000 unpaid principal from the 1991 mortgage, $32,000 in unpaid interest and late fees, and additional cash in the amount of $53,000. The mortgage listed the Betsy Scull Road property as collateral for the loan, as well as commercial property located at 215 North Decatur Avenue, Margate, New Jersey as additional collateral. The note was to be repaid in full no later than October 1, 1996. The mortgage and note were apparently prepared by counsel for the Grillos. The mortgage was executed by the debtors, but never recorded.

The Grillos failed to make any principal payments toward either the 1991 or the 1995 notes. From 1991 to 1994, the debtors made $43,900 in interest payments to the defendant. From 1995 through the present, they made an

additional $76,750 in interest payments.

On February 16, 1999, John F. Grillo and Marie T. Grillo filed a Chapter 7 petition, case number 99-11363/JHW. Mr. Corigliano was listed as a secured creditor with a first mortgage in the amount of $330,000. At the meeting of creditors on March 18, 1999, the Chapter 7 trustee requested copies of the mortgages. Debtors' counsel, David Kasen, Esquire, went to the Atlantic County Clerk's Office and was able to retrieve the 1991 recorded mortgage, but could not locate a filed copy of the 1995 mortgagee. By letter dated April 12, 1999, Mr. Kasen forwarded a copy of the 1991 recorded mortgage to the Chapter 7 trustee, and informed the trustee that the 1995 mortgage could not be located. Copies of the letter were sent to Mr. Corigliano and to Thomas Haynes, Esquire, who prepared the 1995 mortgage, with a request to them to send a copy of the 1995 recorded mortgage to the trustee. On the next day, April 13, 1999, the trustee filed a Notice of Abandonment of the property. The hearing date for objections was set for May 10, 1999. No objections were filed.

On May 11, 1999, the day following the trustee's abandonment of the property, the debtors moved, pursuant to § 522(f), to avoid a judicial lien asserted against the property held by the Billows Electric Supply Co., citing to the 1991 mortgage and a written statement by the defendant stating that the

amount owed to him was $330,000.00. There was no mention of the 1995 mortgage by the debtors, or by the defendant in his supporting certification. On May 24, 1999, the debtors received their discharge, and on June 14, 1999, the Billows' lien was avoided. Debtors' case was closed two days later on June 16, 1999. On February 15, 2002, the debtors moved to reopen their case to avoid a judicial lien held by the State of New Jersey. The motion was apparently resolved by the parties and debtors' motion was denied on March 25, 2002.[1]

On March 18, 2003, Corigliano commenced a foreclosure action in the New Jersey Superior Court, Atlantic County on the 1991 and 1995 mortgages. An amended complaint was filed on July 16, 2003. In April 2004, Corigliano filed a motion for summary judgment.

Debtors filed their current Chapter 13 bankruptcy petition on April 16, 2004. On September 20, 2004, debtors filed this adversary complaint seeking to invalidate the 1991 and 1995 mortgages. In Count One of their complaint, the debtors alleged that: (1) the 1991 mortgage was discharged by virtue of novation; (2) the 1995 mortgage was void pursuant to 11 U.S.C. § 544, and (3)

---

[1] Debtors reopened their case in 2004 to address a subsequent claim by the State of New Jersey, Uninsured Employers Fund. The case was reclosed on April 28, 2004.

the debtors had the power to bring a section 544 action.[2]  Alternatively, the debtors sought the entry of an order compelling the Chapter 13 trustee to pursue the section 544 action.

On October 22, 2004, the defendant Duilio Corigliano moved for summary judgment as to Count One to validate the 1991 and 1995 mortgages on various grounds.  On November 29, 2004, by oral decision, this court granted partial summary judgment in favor of Corigliano, validating the 1991 mortgage and leaving the status of the 1995 mortgage unresolved.

On December 22, 2004, Corigliano moved for relief from the automatic stay to foreclose on the debtors' property.  On February 7, 2005, an interim order was entered requiring the debtors to make adequate protection payments in the amount of $1,800.00 per month pending a final determination of the matter.[3]  Consideration of the stay relief motion was adjourned on July 12, 2005 until after the final resolution of this matter.

---

[2]    Count Two of the complaint concerns the claims of the IRS against the debtors and is the subject of a separate opinion.

[3]    Debtors responded with a motion to expunge Corigliano's claim on April 6, 2005, asserting that it was filed one day after the bar date.  Debtors withdrew their motion on May 12, 2005.

Debtors' case was converted to Chapter 11 on May 16, 2005. On May 19, 2005, debtors filed this motion for summary judgment seeking an order voiding the unrecorded 1995 mortgage. Oral argument in this matter was considered on July 5, 2005.

### DISCUSSION

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law, and where there exists no genuine dispute as to any material fact.[4] Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S. Ct. 1689, 1694, 123 L. Ed.2d 317 (1993); Fasold v. Justice, 409 F.3d 178, 183 (3d Cir. 2005); Caufield v. Center Area School District, 133 Fed.Appx. 4, 8 (3d Cir. 2005).

Here, the facts are not disputed. The debtors seek to void the defendant's unrecorded 1995 mortgage pursuant to the trustee's strong arm powers under 11 U.S.C. § 544. Corigliano defends on three grounds, including

---

[4] Bankruptcy Rule 7056 makes FED.R.CIV.P. 56 applicable to adversary proceedings. Rule 56(c) provides, in pertinent part that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

theories based on inquiry notice and principles of equity and judicial estoppel.

I.    <u>11 U.S.C. § 544</u>

Pursuant to 11 U.S.C. § 1107, the debtor in possession has the same rights and powers as a trustee, with certain exceptions that are not relevant here.  <u>In re Gandy</u>, 299 F.3d 489, 497 (5th Cir. 2002).  These powers include the trustee's avoidance powers under 11 U.S.C. § 544, which provides in relevant part that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by --
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544.  In other words, the trustee is given the rights and powers under state law of a hypothetical bona fide purchaser of real property.  <u>In re Bridge</u>, 18 F.3d 195, 204 (3d Cir. 1994) (a hypothetical purchaser is one who paid value, perfected his interest and conducted a title search).  The purpose of

-8-

the so-called "strong arm" powers of section 544 is to allow the trustee or debtor in possession to avoid unperfected security interests, secret liens and/or other undisclosed claims.  In re Canney, 284 F.3d 362, 374 (2d Cir. 2002); In re Reliance Equities, Inc., 966 F.2d 1338, 1344 (10th Cir. 1992).  "Although federal law provides the trustee with the rights of an actual unsecured creditor, the extent of the rights is determined entirely by the applicable state or local law."  5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 544.09[2] at 544-18 (15th Ed. Rev. 2005).  See also Bridge, 18 F.3d at 200 ("the trustee's powers under § 544(a) are subject to the law of the locus of the property"); McCannon v. Marston, 679 F.2d 13, 14 (3d Cir. 1982).

New Jersey is a "race-notice" jurisdiction where the first party to record an instrument holds priority if that party recorded its interest without notice of a previously acquired interest.  PNC Bank v. Axelsson, 373 N.J. Super. 186, 190, 860 A.2d 1021, 1023-24 (Ch. Div. 2004).  See also Cox v. RKA Corp., 164 N.J. 487, 496, 753 A.2d 1112, 1117 (2000).  The applicable New Jersey statute provides that:

> Every deed or instrument of the nature or description set forth in section 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording office in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been

> first duly recorded or registered; but any such deed or instrument shall be valid and operative although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

N.J.S.A. 46:22-1. As one New Jersey court has explained:

> Thus, a document that could have been recorded but was not is invalid as against any subsequent purchaser or interest holder who takes without knowledge of the unrecorded document. This statute specifically provides, however, that the unrecorded interest is not void against a later-recorded interest taken with knowledge, actual or constructive, of the unrecorded interest. Accordingly, if plaintiff knew of defendants' unrecorded easement when it took its mortgage, N.J.S.A. 46:22-1 would validate the unrecorded easement as against the bank.

Axelsson, 373 N.J. Super. at 190, 860 A.2d at 1024.

As a matter of law, the debtors herein, who are debtors-in-possession acting on behalf of the Chapter 11 bankruptcy estate, hold the status of subsequent bona fide purchasers of the debtors' home for valuable consideration, who have perfected the transfer as of the commencement of the debtors' case. In re Bridge, 18 F.3d at 204 ("As a hypothetical bona fide purchaser, the trustee [or the debtor-in-possession] is deemed to have paid value for the . . . property and is deemed to have perfected (i.e., recorded) his interest as legal title holder in the subject property as of the date of the bankruptcy petition's filing."). As such bona fide purchasers, who have notice only of recorded liens, they may avoid the unrecorded 1995 mortgage pursuant

-10-

to N.J.S.A. 46:22-1.

### II.  Inquiry Notice

The defendant contends that the debtors cannot avoid an unrecorded mortgage under section 544 where a bona fide purchaser would be placed on constructive or inquiry notice of a prior claim.  It is the defendant's position that the existence of the 1991 mortgage, which would have been discoverable during a title search, served to place a prospective purchaser on "inquiry notice" that there might be additional liens against the property.  Once the purchaser inquired about the 1991 mortgage, the unrecorded 1995 mortgage would have been discovered.

Under New Jersey law, "a prospective purchaser will only be charged with inquiry notice if the recorded instrument contains a 'statement or recital' of the existence of another document affecting the property's title."  Assisted Living of Moorestown v. Moorestown Twp., 31 F. Supp.2d 389, 401 (D.N.J. 1998).  See also Security Pacific Finance Corp. v. Taylor, 193 N.J. Super. 434, 440-41, 474 A.2d 1096, 1099 (Ch. Div. 1984) ("The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a 'reasonable' search of

the particular chain of title."). "A purchaser of real property is charged with notice 'of whatever matters he would have learned by an inquiry which the recitals in the [deed] made it his duty to pursue.'" Id. (quoting Garden of Memories, Inc. v. Forest Lawn Mem. Park Assoc., 109 N.J. Super. 523, 534-35, 264 A.2d 82 (App. Div. 1970)). More broadly, it has also been held that a "purchaser is put on inquiry notice 'where facts are brought to his attention, sufficient to apprise him of the existence of an outstanding title or claim, or surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry.'" Id. (quoting Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108, 581 A.2d 893 (App. Div. 1990)). See also Scult v. Bergen Valley Builders, Inc., 76 N.J. Super. 124, 135, 183 A.2d 865, 871 (Ch. Div. 1962).

Here, we have no indication from the title search of any unrecorded interest, claim or lien. The 1995 mortgage was executed after the 1991 mortgage, and there was no indication in the 1991 mortgage that a subsequent transaction implicating the property was expected or contemplated. Nor are there suspicious circumstances to place the hypothetical purchaser on further inquiry notice. There is no requirement that the purchaser investigate the recorded mortgages to see if there is another related unrecorded interest. With the recording of the 1991 mortgage, the prospective purchaser was placed on

notice of that mortgage. There is nothing to trigger notice of the subsequent 1995 mortgage that followed 4 years later. The defendant's defense to summary judgment on the ground that a bona fide purchaser would have been placed on inquiry notice by the 1991 mortgage is rejected.

   III.   Equity

The defendant also argues that the debtors should not benefit from their failure to record the mortgage after it was signed. The defendant contends that because the debtors' counsel prepared the mortgage and was responsible to record the mortgage, it would be fundamentally unfair to invalidate the mortgage on that ground. The defendant's argument must be rejected, because there is no theory under New Jersey law to support the enforcement of an unrecorded mortgage against a bona fide purchaser.

There is no question that when the debtors executed the written agreement dated November 1, 1995 pledging their home as security for the additional funds advanced to them by Corigliano, notwithstanding the fact that the resulting mortgage was unrecorded, the transaction resulted in an equitable lien on the property in favor of the lender. In re Bridge, 18 F.3d at 200. However, the interest of a bon fide purchaser of real property for value,

such as the debtor-in-possession under § 544(a)(3), prevails over the unrecorded interest of the equitable lienholder, and the bona fide purchaser takes title to the property free from unrecorded equitable liens.  Id. at 203 (citing to Gaskill v. Edmond L.B. Wales's Executors, 36 N.J. Eq. 527, 533-34 (E&A 1883) and Howard v. Diolosa, 241 N.J. Super. 222, 232, 574 A.2d 995, 1000 (App. Div.), certif. denied, 122 N.J. 414, 585 A.2d 409 (1990)).  In a contest between the mortgagee defending his equitable lien against the bona fide purchaser's interest as legal title holder of the real property, "the bona fide purchaser, as supervening legal title holder, prevails." Id. at 204.  Here, the equitable interests of the mortgagee cannot prevail over the hypothetical legal title holders of the real property.

IV.   Judicial Estoppel

In the alternative, the defendant maintains that principles of judicial estoppel would prohibit the debtors from challenging the 1995 mortgage because of their reliance on the existence of that mortgage during their 1999 bankruptcy case.  The defendant contends that by asserting that their outstanding mortgage liability was in the amount of $330,000.00 in support of their section 522(f) motions in their previous bankruptcy case, the debtors were impliedly recognizing the validity of the 1995 mortgage.  Debtors respond that

-14-

because they did not mention the 1995 mortgage in those proceedings, judicial estoppel does not apply.

The principal of judicial estoppel, also known as the "'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he] has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). See also Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773 (3d Cir. 2001). It is intended to prevent parties from "playing fast and loose with the courts." Id. at 361. The party need not have benefitted from the prior inconsistent position. Id. See also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 324 (3d Cir. 2003), cert. denied, 541 U.S. 1043, 124 S. Ct. 2172, 158 L.Ed.2d 732 (2004) ("the presence or absence of any such benefit is merely a factor in determining whether the evidence would support a conclusion of bad faith").

To decide whether or not judicial estoppel is appropriate, courts have considered: (1) whether the party's present position is clearly inconsistent with a position it asserted earlier in the proceeding; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that

judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 1815, 149 L.Ed.2d 968 (2001). See also Henderson v. Chartiers Valley School, No. 04-1593, 2005 WL 736659, *4 n.4 (3d Cir. Apr. 1, 2005); U.S. v. Pelullo, 399 F.3d 197, 222-23 (3d Cir. 2005); Detz v. Greiner Industries, Inc., 346 F.3d 109, 114-15 (3d Cir. 2003); Carrasca v. Pomeroy, 313 F.3d 828, 835 (3d Cir. 2002). Each case must be determined after examining its particular facts and circumstances. McNemar v. The Disney Store, Inc., 91 F.3d 610, 617 (3d Cir. 1996); Motley v. New Jersey State Police, 196 F.3d 160, 163 (3d Cir. 1999). Judicial estoppel is not appropriate "unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Montrose, 243 F.3d at 779-80.

In this case, we had occasion to impose judicial estoppel as to Corigliano's 1991 mortgage, because the debtors' attempt to invalidate that mortgage in this proceeding was irreconcilably inconsistent with the debtors' reliance on the validity of that mortgage in their 1999 Chapter 7 case. The 1991 recorded mortgage, a copy of which was supplied to the trustee, caused

the trustee to abandon the debtors' property.[5]  The 1991 mortgage was appended to the debtors' subsequent motion to avoid the judgment lien of Billows Electric Supply Co.  Although the debtors asserted in their motion that the amount due on the Corigliano mortgage was $330,000, which included the additional sums borrowed in 1995, the motion to avoid the lien would have been granted even if the amount due was limited to the 1991 note and mortgage.[6]  To invalidate the 1991 mortgage in this 2004 case on the basis of the debtor's novation argument would have created the perception that in approving the trustee's abandonment and granting the motion to avoid the Billows Electric lien, the court was misled in the 1999 case in its reliance on the 1991 mortgage.  Judicial estoppel principles compelled the validation of the 1991 mortgage in this case.

A different fact pattern is presented with respect to the 1995 mortgage. Corigliano's invocation of judicial estoppel to prevent the debtors from avoiding the 1995 mortgage cannot be sustained.  The invalidation of the 1995 mortgage is not inconsistent with the abandonment of the property by the trustee in the 1999 case, or the avoidance of the Billows Electric judicial lien against the

---

[5] The debtors represented the value of the property at the time of the filing of the petition to be $238,000.  The amount due on the first mortgage was $215,000 plus accrued interest.

[6] See supra note 5.

property. The debtors' present position is not clearly inconsistent with the position asserted by the debtors in the 1999 case.

Debtors' motion for summary judgment is granted. Counsel for the debtors shall submit an order in conformance with this opinion.

Dated: October 12, 2005

JUDITH H. WIZMUR
CHIEF U.S. BANKRUPTCY JUDGE